AO 106 (Rev. 04/10) Application for a Search Warrant     EC

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
)   Case No. 2:22-mj-704
Location history data for the Google account identified as )
"sarahbxx92@gmail.com" referred to as the SUBJECT )
ACCOUNTS that is currently stored at the premises )
controlled by Google, LLC.

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the ____Northern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841, 843, 846 | Distribution and Possession with Intent to Distribute Controlled Substances, Distribution Resulting in Serious Bodily Harm, Use of Communications Facility in Commission of Controlled Substance, Conspiracy to Possess with Intent to Distribute a Controlled Substance |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

HSI TFO Brandon Harmon
*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 25, 2022

Kimberly A. Jolson
United States Magistrate Judge

City and state: Columbus, Ohio

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT
EASTERN DIVISION OF OHIO

| | |
|---|---|
| **In the Matter of the Search of:** ) | Case No.  2:22-mj-704 |
| ) | |
| **Location history data for the Google account identified** ) | Magistrate Judge |
| **as "sarahbxx92@gmail.com" that is currently stored** ) | |
| **at the premises controlled by Google, LLC.** ) | <u>UNDER SEAL</u> |

### <u>AFFIDAVIT IN SUPPORT OF</u>
### <u>AN APPLICATION FOR A SEARCH WARRANT</u>

I, Brandon L. Harmon, Task Force Agent, United States Department of Homeland Security Investigations (HSI), being duly sworn, depose and state that:

### <u>INTRODUCTION</u>

1. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. I am a Task Force Agent with HSI assigned to the Office of the Assistant Special Agent in Charge, Columbus, Ohio. I am currently assigned to the Central Ohio Human Trafficking Task Force (COHTTF). I am also a Detective with the Columbus, Ohio Division of Police (CPD).  CPD has employed me since December of 2005. As a Task Force Agent, my responsibilities and duties include the investigation and enforcement of federal laws and regulations related to customs and immigration violations, including but not limited to narcotics, financial crimes, fraud, human trafficking, and violations of the Immigration and Nationality Act. During my tenure as a Task Force Agent, I have participated in State and Federal investigations involving the illegal possession of firearms and narcotics in conjunction with human trafficking and prostitution, human trafficking, and narcotics trafficking.

3. I have participated in the execution of search warrants and arrests related to the above-referenced offenses. I have seized or assisted in seizing contraband and evidence, including currency, narcotics, firearms, and documentary evidence, which includes electronically stored documents. I have had formal and on-the-job training in matters involving human trafficking and narcotics trafficking from instructors, supervisors, and colleagues. I have been personally involved in investigations concerning the possession, manufacture, transportation, distribution, and importation of controlled substances, as well as methods used to finance drug transactions. I am knowledgeable in the enforcement of state and federal laws pertaining to narcotics and dangerous drugs.

4. By virtue of my experience and training, your affiant is familiar with money laundering techniques utilized by individuals involved in illegal activities, such a narcotics and human trafficking. Your affiant knows that it is common for people involved in these types of illegal activities to accumulate large sums of U.S. currency that they seek to launder in order to avoid detection of their illegal activities, and to attempt to freely spend the cash without drawing law enforcement scrutiny. As a result of my training and experience, I am familiar with how drug trafficking organizations illegally traffic, transport, and distribute narcotics and the proceeds derived from the distribution of narcotics. Throughout this affidavit, reference to "investigators" specifically refers to criminal investigators.

5. Based on my training and experience as a law enforcement officer, I also know that members of drug trafficking organizations (DTO) depend on communicating with each other for the purpose of successfully trafficking narcotics. I understand that international and domestic telephone communications are vital to members of a global drug trafficking organization to successfully coordinate and organize the smuggling, transportation, and distribution of illegal narcotics to the United States. Domestic and international drug traffickers depend on telephone communications to cryptically discuss their illegal activities. International telephone communications allow narcotics traffickers to maintain contact with drug associates, drug suppliers, and drug customers operating in different countries. Cellular telephone texts and other electronic messaging also enable drug trafficking organizations to maintain contact with the associates, drug suppliers, and customers. The telephonic electronic communications are often rapidly followed by telephonic contact with the individual signaling the electronic message. Drug trafficking

organizations frequently use cellular electronic messaging features to communicate with associates relating to the logistics of their drug trafficking business. I am also aware that many drug trafficking organizations utilize cellular telephones as an electronic means of communication in an effort to clandestinely communicate without law enforcement interception.

6. Through instruction, training, and participation in investigations, I have become familiar with the manner and methods by which narcotics traffickers and sex traffickers conduct their illegal business and the language and terms that are used to disguise conversations about their narcotics activities. From experience and training, I have learned that drug traffickers believe their conversations are susceptible to interception and rarely overtly discuss their illegal activities. Instead, to conceal the true nature of their illegal activities and to avoid detection by law enforcement, drug traffickers use coded words and phrases to describe narcotics, currency, and locations. Moreover, narcotics traffickers and sex traffickers frequently use telephone communications to further their illegal activities by, among other things, remaining in constant communication with one another, either verbally or via text messaging.

7. I am also aware that drug traffickers and sex trafficking organizations utilize pre-paid telephones with a direct connect (DC) feature that have either no subscriber listed, or a bogus subscriber listed. I am aware that those involved in illegal drug operations often list their telephone and cellular telephones in the names of others or in fictitious names to conceal their identities for illegal purposes, and to thwart law enforcement detection and prosecution. It is likewise essential that such organized groups meet to formulate plans concerning narcotics or other illegal activities, and to divide their illegal proceeds. I am also aware that drug traffickers and sex traffickers often utilize more than one communication device at one time in order to facilitate their drug trafficking activities. Through my employment as a law enforcement officer, I have gained knowledge in the use of various investigative techniques including the use of judicially-authorized Title III intercepts, physical surveillance, undercover agents, confidential informants, cooperating witnesses, the controlled purchases of illegal narcotics, electronic surveillance, consensually-monitored recordings, investigative interviews, trash pulls, financial investigations, the service of administrative and grand jury subpoenas, and the execution of search and arrest warrants.

## PURPOSE OF THE AFFIDAVIT

8. This Affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure. I make this affidavit in support of an application for a search warrant for location history data information associated with the Google account sarahbxx92@gmail.com that is currently stored at the premises controlled by Google, LLC, headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043 (the **SUBJECT ACCOUNT**). The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google, LLC. to disclose to the government records and other information in its possession, including the contents of communications, pertaining to the subscriber or customer associated with the **SUBJECT ACCOUNT.**

9. The **SUBJECT ACCOUNT** to be searched is more particularly described in Attachment A, for the items specified in Attachment B, which items constitute instrumentalities, fruits, and evidence of violations of A) the distribution and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1); (B) the use of a communications facility in the commission of controlled substances offenses, in violation of Title 21, United States Code, Section 843(b); (C) attempts and conspiracies to commit the aforementioned crimes, in violation of Title 21, United States Code, Section 846; (D) sex trafficking by means of force, threats, fraud, or coercion, in violation of Title 18, United States Code, Sections 1591(a); (E) obstruction or conspiracy to commit sex trafficking, in violation of Title 18, United States Code, Section 1591(d) and 1594; and (F) distribution of a controlled substance resulting in serious bodily injury (hereinafter collectively referred to as the **TARGET OFFENSES.** I am requesting authority to search the **SUBJECT ACCOUNT**, wherein the items specified in Attachment B may be found, and to seize all items listed in Attachment B as instrumentalities, fruits, and evidence of crime.

10. The statements contained in this affidavit are based in part on information provided by U.S. federal law enforcement agents; written reports about this and other investigations that I have written or received, directly or indirectly, from other law enforcement agents, information gathered from the service of administrative subpoenas; independent

investigation and analysis by law enforcement agents/analysts and computer forensic professionals; and my experience, training and background as a TFO. Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause. I have not omitted any facts that would negate probable cause.

## BACKGROUND RELATING TO GOOGLE AND RELEVANT TECHNOLOGY

11. Based on my training and experience, I know that cellular devices, such as mobile telephone(s), are wireless devices that enable their users to send or receive wire and/or electronic communications using the networks provided by cellular service providers. Using cellular networks, users of many cellular devices can send and receive communications over the Internet.

12. I also know that many devices, including but not limited to cellular devices, have the ability to connect to wireless Internet ("wi-fi") access points if the user enables wi-fi connectivity. These devices can, in such cases, enable their users to send or receive wire and/or electronic communications via the wi-fi network. A tablet such as an iPad is an example of a device that may not have cellular service but that could connect to the Internet via wi-fi. Wi-fi access points, such as those created through the use of a router and offered in places like homes, hotels, airports, and coffee shops, are identified by a service set identifier ("SSID") that functions as the name of the wi-fi network. In general, devices with wi-fi capability routinely scan their environment to determine what wi-fi access points are within range and will display the names of networks within range under the device's wi-fi settings.

13. Based on my training and experience, I also know that many devices, including many cellular and mobile devices, feature Bluetooth functionality. Bluetooth allows for short-range wireless connections between devices, such as between a device such as a cellular phone or tablet and Bluetooth-enabled headphones. Bluetooth uses radio waves to allow the devices to exchange information. When Bluetooth is enabled, a device routinely scans its environment to identify Bluetooth devices, which emit beacons that can be detected by devices within the Bluetooth device's transmission range, to which it might connect.

14. Based on my training and experience, I also know that many cellular devices, such as mobile telephones, include global positioning system ("GPS") technology. Using this technology, the device can determine its precise geographical coordinates. If permitted by the user, this information is often used by apps installed on a device as part of the apps' operation.

15. Based on my training and experience, I know Google is a company that, among other things, offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Nearly every device using the Android operating system has an associated Google account, and users are prompted to add a Google account when they first turn on a new Android device.

16. In addition, based on my training and experience, I know that Google offers numerous apps and online-based services, including messaging and calling (*e.g.,* Gmail, Hangouts, Duo, Voice), navigation (Maps), search engine (Google Search), and file creation, storage, and sharing (*e.g.*, Drive, Keep, Photos, and YouTube). Many of these services are accessible only to users who have signed in to their Google accounts. An individual can obtain a Google account by registering with Google, and the account identifier typically is in the form of a Gmail address (*e.g.*, example@gmail.com). Other services, such as Maps and YouTube, can be used with limited functionality without the user being signed in to a Google account.

17. Based on my training and experience, I also know Google offers an Internet browser known as Chrome that can be used on both computers and mobile devices. A user has the ability to sign-in to a Google account while using Chrome, which allows the user's bookmarks, browsing history, and other settings to be uploaded to Google and then synced across the various devices on which the subscriber may use the Chrome browsing software, although Chrome can also be used without signing into a Google account. Chrome is not limited to mobile devices running the Android operating system and can also be installed and used on Apple devices and Windows computers, among others.

18. Based on my training and experience, I know that, in the context of mobile devices, Google's cloud-based services can be accessed either via the device's Internet browser or via apps offered by Google that have been downloaded onto the device. Google apps exist

for, and can be downloaded to, devices that do not run the Android operating system, such as Apple devices.

19. According to my training and experience, as well as open-source materials published by Google, I know that Google offers accountholders a service called "Location History," which authorizes Google, when certain prerequisites are satisfied, to collect and retain a record of the locations where Google calculated a device to be based on information transmitted to Google by the device. That Location History is stored on Google servers, and it is associated with the Google account that is associated with the device. Each accountholder may view their Location History and may delete all or part of it at any time.

20. Based on my training and experience, I know that the location information collected by Google and stored within an account's Location History is derived from sources including GPS data and information about the wi-fi access points and Bluetooth beacons within range of the device. Google uses this information to calculate the device's estimated latitude and longitude, which varies in its accuracy depending on the source of the data. Google records the margin of error for its calculation as to the location of a device as a meter radius, referred to by Google as a "maps display radius," for each latitude and longitude point.

21. Based on open-source materials published by Google and my training and experience, I know that Location History is not turned on by default. A Google accountholder must opt-in to Location History and must enable location reporting with respect to each specific device and application on which they use their Google account in order for that usage to be recorded in Location History. A Google accountholder can also prevent additional Location History records from being created at any time by turning off the Location History setting for their Google account or by disabling location reporting for a particular device or Google application. When Location History is enabled, however, Google collects and retains location data for each device with Location Services enabled, associates it with the relevant Google account, and then uses this information for various purposes, including to tailor search results based on the user's location, to determine the user's location when Google Maps is used, and to provide location-based advertising. As noted above, the Google accountholder also has the ability to view and, if desired, delete some or all Location History entries at any time by logging into their Google account or by enabling auto-deletion of their Location History records older than a set number of months.

22. Location data, such as the location data in the possession of Google in the form of its users' Location Histories, can assist in a criminal investigation in various ways. As relevant here, I know based on my training and experience that Google has the ability to determine, based on location data collected and retained via the use of Google products as described above, devices that were likely in a particular geographic area during a particular time frame and to determine which Google account(s) those devices are associated with. Among other things, this information can indicate that a Google accountholder was near a given location at a time relevant to the criminal investigation by showing that his/her device reported being there.

23. Based on my training and experience, I know that when individuals register with Google for an account, Google asks subscribers to provide certain personal identifying information. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, this information often provide clues to their identity, location, or illicit activities.

24. Based on my training and experience, I also know that Google typically retains and can provide certain transactional information about the creation and use of each account on its system. This information can include the date on which the account was created, the length of service, records of login (*i.e.,* session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, Google often has records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

## STATEMENT OF PROBABLE CAUSE

38. In 2021, the Central Ohio Human Trafficking Task Force (COHTTF) initiated an investigation into Cordell **WASHINGTON** aka "Bro" aka "Dub" and Patrick **SAULTZ** aka "White Boy Pat", who are alleged to be the leaders of a Drug Trafficking Organization (DTO) in Columbus, Ohio. Investigators have since learned this DTO is engaged in a large-scale conspiracy involving narcotics distribution, sex trafficking, fraud, and money laundering. The results of the investigation thus far have indicated that the DTO is bringing in large quantities of fentanyl and cocaine into Columbus, Ohio. These drugs were being sold in and around the Columbus area while simultaneously being used to coerce individuals to engage in sexual activity for profit, from which the DTO benefits. In beginning their investigation into the sex trafficking portion of this DTO, the COHTTF learned that **SAULTZ** was already under investigation with the DEA along with his co-target Cordell **WASHINGTON** since 2020.

39. Through the ongoing investigation, investigators have identified several individuals associated with this DTO. The associates are engaged in the day-to-day operations of the DTO related to drug and sex trafficking offenses. Numerous individuals have been identified as being participants of the illicit activity being conducted by this DTO and include, but are not limited to, Patrick **SAULTZ** aka "White Boy Pat", Cordell **WASHINGTON** aka "DUB", aka Cory, aka "Bro," David **PRICE**, Tyler **BOURDO,** and **ALLISON** Smith.

40. On May 17, 2022, a federal court order for the interception of wire and electronic communications for three separate telephone lines being utilized by Cordell **WASHINGTON** was obtained as it related to the investigation into this DTO and their illegal activities. On June 17, 2022, that federal court order was renewed for the continued wire and electronic interceptions of the telephone lines associated to **WASHINGTON.**

41. On June 9, 2022, a federal court order for the interception of wire and electronic communications for the telephone line being utilized by Patrick **SAULTZ** was obtained as it related to the investigation into this DTO and their illegal activities.

42. Based on the information obtained in the wire and electronic communications, in conjunction with the history of the investigation and the physical and electronic surveillance of this DTO, between June 29, 2022, and July 1, 2022, law enforcement executed ten search warrants on residences and storage facilities and four search warrants on vehicles related to the DTO led

by **WASHINGTON** and **SAULTZ**. The searches of those locations led to the seizure of over $1,000,000 in U.S. currency, copious amounts of suspected narcotics, and over 40 firearms. During the execution of the search warrants, the following individuals were arrested pursuant federal criminal complaints: **SAULTZ, WASHINGTON, PRICE, BOURDO**, Tavarryuan **JOHNSON, ALLISON,** and Alexis **LEWIS**.

43. On June 30, 2022, the Grand Jury returned an Indictment for numerous **TARGET SUBJECTS** related to this DTO, to include **WASHINGTON, SAULTZ, ALLISON, PRICE, BOURDO, LEWIS,** and **JOHNSON,** were charged with federal offenses related to drug trafficking and conspiracy to commit drug trafficking.

44. In addition, on June 30, 2022, a federal search warrant was also obtained for five storage units associated to **SAULTZ** and **WASHINGTON** at the CAR-GO Self Storage facility located at 3935 Westerville Road in Columbus, Ohio. The search warrant was executed that same day. Items of interest found in the storage units include but are not limited to seven firearms and approximately $1,220,340 in United States currency.

45. On October 5, 2022, the Grand Jury returned a Superseding Indictment which included drug trafficking and firearms offenses for twenty-three defendants related to this DTO. Count Ten of that Superseding Indictment specifically charged Tyler **BOURDO** and Robert **TINSLEY III** for distribution of fentanyl and cocaine base resulting in serious bodily injury. The victim noted in this count is Sarah **BURRIS**, who is now deceased due to an overdose.[1]

46. In the investigation preceding her death, numerous interviews were held between **BURRIS** and law enforcement. Investigators had previously identified **BURRIS** as an individual who had direct knowledge of this DTO from one of the original tips they had received from CPD when they initiated their investigation into the sex trafficking portion of the case. **BURRIS** had also previously disclosed that she was a victim of this DTO's sex trafficking. In summary, during the multiple interviews of **BURRIS**, she advised that **PRICE** was selling drugs and providing women with drugs in exchange for sexual favors. **BURRIS** indicated that the men were using an online website called "Megapersonals" to place escort ads for women to engage

---

[1] Your affiant would note that **BURRIS** overdosed on narcotics distributed to her by this DTO on or about October 10, 2021 at the address of 90 North Warren in Columbus, Ohio. At the time of that overdose, she was revived using Narcan. **BOURDO** and **TINSLEY** were charged with the distribution of crack cocaine and fentanyl to her for that incident.

in solicitation for prostitution which this investigation corroborated as indicated above. **BURRIS** also indicated that the person that supplied the illegal drugs was **SAULTZ** and that **SAULTZ** and **WASHINGTON** are at the top of the DTO for supplying narcotics with **PRICE** directly underneath them in the hierarchy. **BURRIS** indicated that she sometimes went inside **SAULTZ's** residence to get the narcotics and that the drug packages usually consisted of crack-cocaine, fentanyl, Xanax, and crystal meth.

47. On October 14, 2021, your affiant learned that **BURRIS** was found deceased in an alley directly behind 458 South Harris in Columbus, Ohio[2]. Her cellphone, which is currently inventoried under Columbus Police Property Number 21P016914-3 and located at the Columbus Police Property Room, was recovered next to her body.

48. On October 22, 2021, your affiant submitted a search warrant to the Franklin County Municipal Court for an examination of **BURRIS's** phone. Pursuant to that warrant, a forensic extraction and analysis was completed by law enforcement. A review of that extraction confirmed that the **SUBJECT ACCOUNT** belonged to **BURRIS** and numerous references to the **SUBJECT ACCOUNT** were recovered from her device.

49. Your affiant further spoke to the mother of **BURRIS** who confirmed that **BURRIS** utilized the Google account email address of sarahbxx92@gmail.com.

50. On December 13, 2021, the Franklin County Forensic Science Center issued a Postmortem Examination Report noting that the cause of death for **BURRIS** was combined cocaine, fentanyl, flurofentanyl, and xylazine intoxication. The Forensic Pathologist and Deputy Corner was listed as Dr. Lyndsey A. Emery. In addition, the report noted that **BURRIS** had bruising on her upper arms that was inflicted port-mortem which was consistent with her body being moved after her death.

51. As the investigation into the overdose of **BURRIS** began, your affiant obtained surveillance footage from numerous residences in and around the area where the body of **BURRIS** was found. In reviewing that footage, **BOURDO** is observed on October 14, 2021, at approximately 10:10am walking southbound toward the general direction of **BURRIS's** body just seconds before police, ambulance, and EMS vehicles arrive to her body. Your affiant

---

[2] Your affiant would note that this address is located a few houses down from the location of 438 South Harris in Columbus, Ohio which your affiant knew to be one of the main drug distribution houses related to this DTO.

would note that **BOURDO's** main residence per this investigation is 430 B. South Warren which also served as a drug distribution house for this DTO. That location is less than approximately one block away from where **BURRIS** was found.

52. Based on my training and experience and the investigation to date, I know that Google locations will be able to track the user of the Google account, here the **SUBJECT ACCOUNT,** and that the location data may be useful in identifying the exact locations **BURRIS** may have been prior to her being moved and found in the alley she was ultimately recovered in.

53. Therefore, I submit that there is probable cause to search information that is currently in the possession of Google and that relates to the above noted device that reported being within the Target Location described in Attachment A during the time period described in Attachment A for evidence of **TARGET OFFENSES**. The information to be searched includes the location(s) reported by the **SUBJECT DEVICE** to Google and the associated timestamp.

## CONCLUSION

25. Based on the foregoing, there is probable cause to believe that the federal criminal statutes cited herein have been violated, and that the contraband, property, evidence, fruits and instrumentalities of these offenses, are located on/in the **SUBJECT ACCOUNT.** Therefore, I respectfully request that this Court issue search warrants for the location described in Attachment A, authorizing the seizure and search of the items described in Attachment B.

Respectfully submitted,

Brandon Harmon
Task Force Officer
Homeland Security Investigations

Sworn and subscribed before me this 25th day of October, 2022.

Kimberly A. Jolson
United States Magistrate Judge

## Attachment A
## Property to Be Searched

**Subject Account Defined**

This warrant applies to location history data information associated with the Google account sarahbxx92@gmail.com that is currently stored at the premises controlled by Google, LLC, headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043 (the **SUBJECT ACCOUNT**).

This warrant is directed to Google LLC, and applies to the following for the **SUBJECT ACCOUNT:**

1. Location History data, sourced from information including GPS data and information about visible wi-fi points and Bluetooth beacons transmitted from devices to Google, reflecting devices that Google calculated were or could have been (as indicated by margin of error, *i.e.,* "maps display radius") located within the geographical region bounded by the latitudinal and longitudinal coordinates, dates, and times below ("Initial Search Parameters"); and
2. identifying information for Google Accounts associated with the responsive Location History data.

**Initial Search Parameters**

**Dates**: October 8, 2021 through October 14, 2021
**Time Period**: 00:00:00 AM EST through 23:59:99 PM EST
**Target Location**: Geographical area identified as (see attached illustration)

a. 39.945624, -83.071494 / area of 458 S. Harris Ave
b. 39.945962, -83.072052 / area of 438 S. Harris Ave
c. 39.94619, -83.07093 / area of 430 S. Warren Ave
d. 39.95700, -83.07183 / area of 90 N. Warren Ave

**Attachment B**
**Particular Items to Be Seized**

I. **Information to be disclosed by Google, LLC**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, LLC, including any records that have been deleted but are still available to Google, Google is required to disclose said information with regard to the **SUBJECT ACCOUNT** listed in Attachment A for the time period of October 8, 2021 through October 14, 2021:

1. Google shall query location history data based on the Initial Search Parameters specified in Attachment A. For each location point recorded within the Initial Search Parameters, and for each location point recorded outside the Initial Search Parameters where the margin of error (*i.e.*, "maps display radius") would permit the device to be located within the Initial Search Parameters, Google shall produce to the government information specifying the corresponding unique device ID, timestamp, location coordinates, display radius, and data source, if available (the "Device List").

II. **Information to Be Seized**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of A) the distribution and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1); (B) the use of a communications facility in the commission of controlled substances offenses, in violation of Title 21, United States Code, Section 843(b); (C) attempts and conspiracies to commit the aforementioned crimes, in violation of Title 21, United States Code, Section 846; (D) sex trafficking by means of force, threats, fraud, or coercion, in violation of Title 18, United States Code, Sections 1591(a); (E) obstruction or conspiracy to commit sex trafficking, in violation of Title 18, United States Code, Section 1591(d) and 1594; and (F) distribution of a controlled substance resulting in serious bodily injury, involving the **SUBJECT ACCOUNT** from October 8, 2021 through October 14, 2021.

